IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN VEYSEY,

                Petitioner,

v.

LOUIS WILLIAMS, II, Warden,
Federal Correctional Institution – Oxford,

                Respondent.

OPINION AND ORDER

16-cv-299-wmc

---

In 2001, petitioner John Veysey was convicted after a jury trial of 16 counts of mail and wire fraud, one count of arson of a rented house and one count of felony by fire. Although not chargeable as federal offenses for lack of an interstate component, Veysey's horrific underlying conduct apparently involved: burning down two previous houses for insurance proceeds; poisoning his first wife and fraudulently collecting on her life insurance policy; and drugging and attempting to kill his second wife and their infant son in the rented house fire, also for the insurance proceeds. *See United States v. Veysey*, 334 F.3d 600, 601 (7th Cir. 2003). The United States District Court for the Northern District of Illinois imposed the maximum sentence of 5 years on each count of mail or wire fraud, 20 years for arson, and 10 years for felony by fire, all to run consecutively, for a total of 110 years in prison. *Id.* at 602.

Veysey has now filed a second petition for habeas corpus relief under § 2241, arguing that the Supreme Court's decision in *Burrage v. United States*, 571 U.S. at 204, 134 S. Ct. 881 (2014), invalidates his 110-year sentence and relieves him of seeking permission from the court of appeals to bring another § 2255 motion. Specifically, Veysey argues that because a jury did not make findings to support the application of a provision of the Sentencing Guidelines, and *Burrange* represents a new, retroactive statutory interpretation, he is entitled to resentencing.

The court disagrees and concludes that Veysey is not entitled to relief. Accordingly, his petition will be dismissed.

FACTS[1]

A.   Veysey's 2001 Conviction and Sentence

In 1999, a grand jury in the United States District Court for the Northern District of Illinois returned a multi-count indictment against Veysey, charging him in connection with a sordid scheme to commit arson and insurance fraud. *See United States v. Veysey*, Case No. 99-cr-381 (N.D. Ill.). At trial, the government presented evidence that Veysey cut the natural gas line and blew up his own home in 1991. Veysey then submitted a grossly inflated claim for its value to his insurance company, which nevertheless compensated him for the loss. After Veysey used some of the proceeds to rebuild his home, he apparently made more than one attempt to kill his wife, ultimately poisoning her and collecting the benefits of an insurance policy on her life.

In 1996, Veysey burned down his home again, submitting another inflated estimate of that loss. Two years later, Veysey remarried another woman with a life insurance policy naming him as the beneficiary, then attempted to murder her by burning down their rented home. Fortunately, she was rescued along with their infant son, who was also the subject of a life insurance policy. The couple divorced soon thereafter.

In May of 1999, the United States Marshals Service arrested Veysey before he could act on plans to murder yet another woman with a sizeable life insurance policy in which he was

---

[1] The following facts are taken from the pleadings and the electronic docket in Veysey's underlying criminal case and his numerous motions for post-conviction relief.

listed as beneficiary. On February 6, 2001, a jury found Veysey guilty as charged of mail fraud, wire fraud, arson, and using fire to commit a felony. Each count of mail and wire fraud carried a 5-year maximum term of imprisonment; the arson count carried a 20-year maximum; and the use of fire in a felony count carried a 10-year maximum. *Veysey*, 334 F.3d at 602. Veysey thus faced a potential statutory maximum of 110 years imprisonment.

At sentencing, the district court calculated the range under the Sentencing Guidelines. As part of this calculation, the court applied the homicide guidelines, based on Veysey's murder of his first wife, which gave Veysey a Guidelines sentence of life imprisonment. U.S.S.G. § 2A1.1. Veysey objected to the application of § 2A1.1 based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), arguing that the application of § 2A1.1 was an issue for the jury, not the judge. The district court disagreed on the grounds that use of the homicide guideline did not increase Veysey's penalty beyond the statutory maximum of 110 years. The district court ultimately imposed the maximum term of imprisonment on each count of conviction and made each term consecutive, for a total term of 110 years imprisonment.

**B.     Post-Conviction Litigation**

On direct appeal, Veysey raised an assortment of arguments, including: (1) the district judge exceeded the federal sentencing guidelines in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) the case should have been severed into seven different trials; (3) the arson offense involving his rented house was not subject to the federal arson statute because the house was not "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" as required by 18 U.S.C. § 844(i); and (4) the trial court erred by admitting erroneous testimony from an actuary. The United States Court of Appeals for the Seventh

3

Circuit rejected all of Veysey's arguments and affirmed the conviction. *See United States v. Veysey*, 334 F.3d 600 (7th Cir. 2003). With respect to the *Apprendi* argument in particular, the Seventh Circuit held "a fact that merely moves the defendant's sentence around within the statutory sentencing range need not be proved by a reasonable doubt." *Id.* at 602. The Supreme Court denied certiorari review on January 12, 2004. *United States v. Veysey*, 540 U.S. 1129 (2004).

On January 21, 2005, Veysey filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In that motion, Veysey argued that the trial court erred by enhancing his sentence based on his having committed homicide since that offense was not pled in the indictment as required by *Apprendi*. Noting that Veysey made this same argument on direct appeal, the trial court denied relief. *United States v. Veysey*, Case No. 05-cv-386 (N.D. Ill. Oct. 13, 2005). Veysey did not appeal that decision.

On January 7, 2010, Veysey filed a "Motion to Dismiss Indictment by a Person in Federal Custody," asserting violations of the Speedy Trial Act under 18 U.S.C. § 3161(b) related to his federal conviction. The district court also denied that motion as untimely. On appeal, the Seventh Circuit treated the motion as one seeking leave to file a second § 2255 motion and denied the request. *Veysey v. United States*, No. 10-1392 (7th Cir. June 9, 2010). In May of 2013, Veysey petitioned for a writ of habeas corpus under 28 U.S.C. § 2241, repeating the same argument raised previously -- that his indictment was tainted by violations of the Speedy Trial Act. That petition was dismissed for lack of jurisdiction. *Veysey v. Werlinger*, 13-cv-330-wmc (W.D. Wis. Dec. 13, 2013). Veysey's appeal was also dismissed for failure to pay the filing fee.

Veysey has now filed this second petition under § 2241, arguing that the Supreme Court's decision in *Burrage v. United States*, 571 U.S. at 204, 134 S. Ct. 881 (2014), invalidates his 110-year sentence.

OPINION

To collaterally attack a conviction or sentence, a federal prisoner must ordinarily file a motion under 28 U.S.C. § 2255. *See Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). If a prisoner has filed one § 2255 motion, he must obtain permission from the court of appeals before he may file a second or successive motion. 28 U.S.C. § 2255(h). Under certain circumstances, however, a federal prisoner "may petition under section 2241 instead if his section 2255 remedy is 'inadequate or ineffective to test the legality of his detention.'" *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012) (quoting 28 U.S.C. § 2255(e)). Subsection (e) is known as § 2255's "savings clause."

The Seventh Circuit has established that three conditions must be present before a petitioner can proceed under § 2241 pursuant to the "inadequate or ineffective" exception. First, the petitioner must be relying on a new statutory-interpretation case -- rather than on a constitutional case -- because § 2255 offers relief to prisoners who rely on new constitutional cases. Second, the petitioner must be relying on a decision that is retroactive on collateral review and could not have been invoked in his previous § 2255 petition. Third, the error that the petitioner identifies must be grave enough to be deemed a miscarriage of justice. *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016); *In re Davenport*, 147 F.3d 605, 611-12 (7th Cir. 1998).

5

Here, Veysey has satisfied the first condition because *Burrage v. United States*, 571 U.S. at 204, 134 S. Ct. 881 (2014), constitutes a new case of statutory interpretation. In *Burrage*, the defendant was charged and found guilty of distribution of heroin resulting in death. At trial, however, evidence revealed that the victim might have died even if he had not taken the heroin sold by the defendant. Specifically, the victim had been on a drug bender and had multiple drugs from various sources in his body at the time of death. On this evidence, the defendant argued that he could only be convicted upon proof that the heroin he distributed was a "but for" cause of death. However, the district court accepted the government's proposed jury instruction, which required a finding that the heroin was merely a "contributing cause" of death. The jury convicted, and the appellate court affirmed his conviction.

On review, the Supreme Court nevertheless reversed, holding that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 892. The Supreme Court defined "but for" as requiring "proof that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* at 887, 892. This proved critical in *Burrage* because, although it was clear that the heroin contributed to an overall effect that caused the victim to stop breathing and die, no expert was willing to say that the victim would have died from the heroin use alone. *Id.* at 885, 890.

Thus, Veysey has identified a new statutory interpretation case in *Burrage*. Moreover, according to the Seventh Circuit, is retroactive on collateral review, *Krieger v. United States*, 842 F.3d 490, 504 (7th Cir. 2016), which satisfied the second condition for proceeding with

6

another § 2255 attack without advance permission of the court of appeals. Nonetheless, Veysey's claim for relief ultimately fails.

As an initial matter, the court is not convinced that *Burrage* is even relevant to Veysey's conviction and sentence. *Burrage* concerned a federal statutory sentencing enhancement that increased the statutory maximum sentence. Here, Veysey was not convicted under the Controlled Substance Act or any other similar statute containing a "death results" enhancement. Rather, he was convicted of simple mail fraud, wire fraud and two arson-related crimes. The "death results" language to which he objects comes from homicide provisions in § 2A1.1 of the federal sentencing guidelines. Moreover, as the Seventh Circuit pointed out in Veysey's direct appeal, the sentencing court's reliance on these homicide provisions did not result in a sentence that exceeded the statutory maximum provided in the underlying fraud and arson statutes. *See Veysey*, 334 F.3d at 602. Finally, Veysey has cited to no cases applying *Burrage* to a guidelines sentence or any case in which the statutory sentencing range was unaffected by the "death results" finding.

That being said, there is a possible argument that *Burrage* could be applicable in cases where the defendant was sentenced pre-*Booker*, as is true here, because the guidelines were still mandatory. In other words, because pre-*Booker* guidelines effectively set mandatory sentencing ranges, it may be that the causation standard set forth in *Burrage* should be extended to "death results" provisions contained in the mandatory guidelines. Neither side develops this argument, however, and the court has found no binding case law resolving the issue.

Even assuming that *Burrage* would apply to mandatory guideline provisions, however, Veysey still cannot proceed under § 2241 because he could have brought a *Burrage*-type argument earlier, either in his direct appeal or his initial § 2255 motion. Specifically, he could

7

have argued that there was not sufficient evidence from which the judge could conclude that his actions were the "but-for" cause of anyone's death. Veysey has not shown, or even suggested, that such an argument was foreclosed by binding circuit precedent.[2] *See Montana*, 829 F.3d at 784 ("... the second prong is satisfied if 'it would have been futile' to raise a claim in the petitioner's original 'section 2255 motion, as the law was squarely against him.'" (quoting *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc))). *See also Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007) (argument must be "foreclosed" by precedent, as distinct from being merely "novel").

Even Veysey argues only that the law was unclear before *Burrage*. As the Seventh Circuit has already explained, "lack of clarity in the law" is not sufficient to prevent a defendant from raising an argument on direct appeal or in a § 2255 motion. *See Prevatte v. Merlak*, -- F.3d --, 2017 WL 3262282 (7th Cir. Aug. 1, 2017) (dismissing § 2241 petition based on *Burrage* because petitioner "could have made a *Burrage*-type argument, i.e., that there was not sufficient evidence to prove that the bomb was a but-for cause of death ..., in his direct appeal or in his initial § 2255 motion. Such an argument was not foreclosed by circuit precedent.")

Finally, although Veysey cites *Burrage*, his arguments actually appear to be a rehash of the *Apprendi*-based arguments he has raised several times already. Veysey argues throughout his petition and supporting documents that a jury, not the judge, should have been required to find, beyond a reasonable doubt, whether the homicide guideline should apply. (*See, e.g.*, dkt. #1, at 14-15, 17, 19, 29) (arguing that facts relevant to guidelines range should have been submitted to jury and proved "beyond a reasonable doubt"). That argument is based more on

---

[2] Nor has this court found any binding precedent that would have foreclosed a *Burrage*-type argument at the time Veysey was sentenced.

*Apprendi*, than *Burrage*. *See Krieger*, 842 F.3d at 499-500 ("The *Burrage* holding is not about who decides a given question (judge or jury) or what the burden of proof is (preponderance versus proof beyond a reasonable doubt). It is rather about *what* must be proved.") Veysey's *Apprendi* arguments have been rejected numerous times, however, and he cannot use *Burrage* to revive them.

As a result, plaintiff has failed to show that *Burrage* is even applicable, much less would have changed his sentence here. Thus, there is no showing of an error so grave as to be deemed a miscarriage of justice, and Versey's motion under § 2241 must be denied.

ORDER

IT IS ORDERED that the federal habeas corpus petition filed by John Veysey pursuant to 28 U.S.C. § 2241 is DENIED and this case is DISMISSED with prejudice. The clerk of court is directed to close this case.

Entered this 30th day of October, 2018.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge